ARKANSAS POWER & LIGHT COMPANY *v.* GANTT.

4-5719 136 S. W. 2d 180

Opinion delivered January 29, 1940.

■■■■■■■■■■

*McKay & McKay, House, Moses & Holmes* and *Eugene R. Warren,* for appellant.

*Whitley & Utley* and *Marsh & Marsh,* for appellee.

BAKER, J. This is the third appeal of this case, but the issues have not been exactly identical each time. The report of the first appeal appears in 189 Ark. 449, 74 S. W. 2d 232; the second, 194 Ark. 925, 109 S. W. 2d 1251.

In the second opinion we mentioned and discussed some announcements in the first opinion "as the law of the case." To save time and space we incorporate by reference only such former declarations "as have become the law of the case" with controlling effect not only upon the trial court, but upon this court upon appeal. We have called attention to this principle of law for the reason we do not now intend to give a reconsideration of any of the propositions already settled. But we do quote from the last opinion in order that the particular matters not already foreclosed by the two prior decisions may appear. This language is found at the top of page 929 of 194 Ark., 109 S. W. 2d 1251, the second opinion as officially reported . . . "but the statute did not in terms declare the contract to be null and void, that the parties to it having performed the contract in good faith, might retain out of the proceeds received from the operation thereof the reasonable value of the services rendered, etc." It is also true we said that under the facts

the "relation of trusteeship still exists and has existed all the time." But this last declaration was not intended to negative the effect that appellants were entitled "to retain . . . the reasonable value of services rendered." This matter is concluded by directions given upon reversal as appears from the final paragraph of the opinion. The trial court was directed "to reinstate the complaint and to state an account between these parties taking as a basis therefor the amount they have received in operating the plant and deducting therefrom a reasonable compensation for operating the same, and to render a judgment in favor of appellants for any balance that may be due them, etc."

Upon the reversal and remand of the case with the directions above quoted, the trial court appointed a master to state an account. A large volume of evidence having already been taken, the parties agreed to submit the matter of accounting upon that proof.

The master, after nearly or about a year's study, submitted a tentative or first report. Early hearings were had upon objections and exceptions. Thereafter the first, or tentative report, was corrected in some particulars and a final or supplemental report was filed. Exceptions were filed and upon the issues thus made the trial court heard arguments and considered briefs.

After what appears to have been a full consideration, the report of the master was approved in all particulars except upon the matter of interest. The court held that the master had erred in the failure to compute interest from the 1st of July, 1934, at 6 per cent. per annum. The exception of the plaintiffs in regard to the interest charge was the only exception that was sustained. The master's report was filed, showing plaintiffs were entitled to recover $18,452.54. The interest charge having been added, the recovery was for $23,862.18.

From the decree of the court comes this appeal urging many exceptions. Appellees have prayed and been allowed a cross-appeal.

We do not feel warranted in any effort to set forth the great array of evidence produced and considered

upon this trial. We shall content ourselves with an announcement of conclusions reached after due consideration of all matters in evidence.

The first matter we consider is the action of the court in overruling a motion of appellant for permission to introduce additional proof after the master's report had been filed.

Appellants allege that after the reversal of this case on the second appeal the appellant installed a meter to determine the amount of current used by the water department. Prior to that time, current to operate the ice-plant and water department was measured by a single meter. As appellants had realized the necessity for determining actual costs of water service, a separate meter was installed. Meter readings from that time were attached to the motion.

Of course we understand this evidence was important largely for purposes of comparison. The motion shows that a greater part of the time, if not all of it, wherein the current was metered to the water department was long after all proof-taking had ended by agreement, and, we may add, possibly after substantial changes had taken place. We find no criterion whereby we might be justified in holding the court abused judicial discretion in denying the motion. *Fromholz* v. *McGahey,* 120 Ark. 216, 179 S. W. 360; *Hollabaugh* v. *Taylor,* 134 Ark. 415, 204 S. W. 628.

The next item we desire to dispose of is the value placed upon the reservoirs by the master and used by him in the computation of a reasonable return to the appellant company. This value was determined to be $7,900.02. In arriving at this figure the testimony of several witnesses was heard. One fixed the original cost at $10,000. Another computed reproduction value as of the date of testimony. We do not accept this as a challenge to decide between the value determined by actual cost and one estimated by an expert as for reproduction. The master was not bound to accept either of the statements, each contradictory of the other as the correct one. But if we assume no other witnesses testified, certainly

both the master and court might accept as conclusive that which they find most convincing, and do so without error.

It suits our purpose best to consider next the value of the land, one-third of which was devoted to the water plant. One witness has fixed the value at $10,000 considering some appraisement, not introduced, another witness fixed the value at $6,000, and finally a former tax assessor who qualified by testifying he was acquainted with real estate values, fixed the value at $1,250. The fact also appeared that one-half of one of the two lots was purchased for $150. Now with this statement of the evidence in this regard, we hold the report and its approval determining the value to be $1,250 with approximately one-third part thereof, or $450, allocated to the water department, were justified.

Another item we shall discuss as an alleged error most strongly insisted upon by the appellant is that there were used 220,000 K. W. H. electric current pumping water and that the master erred in allowing only 76,000 K. W. H. per annum.

To reach this conclusion the master accepted the statement of Mr. Frank Wilkes that there was a consumption of 480,000 K. W. H. to operate the ice plant and to operate the water system. He accepted also the same witness' statement in regard to the amount of the ice produced and the current necessary for that production. The requirement found necessary was taken from Mr. Wilkes' total of 480,000. Certainly this may be regarded as fair to the appellant company when we give consideration to the fact that it was shown that there were times in ice-making when water at the rate of about or nearly 200 gallons per minute was played over the coils. But we give attention to arguments of counsel based upon evidence of average consumption per customer to which is added 30 per cent. for fire hydrants, flushing sewers, and waste.

From that viewpoint approximately the same result was reached; but there is still another test. The appellant company paid over to the city ten per cent. of gross proceeds from the water plant, and the calculation based on this admittedly correct report of the appellant com-

pany supports the master's deductions as confirmed by decree of the court.

The city required the appellant to install an automatic valve in the water system so that when high pressures were required this was had from the pump rather than from the standpipe, or water tower. At least, we so understand the evidence. The valve cost $1,200. The evidence shows the motor operating this valve burned out shortly after installation and was never repaired. Appellant company now insists this article was 100 per cent. depreciated and such credit should have been allowed.

If we accept the proof as stated, the valve was either of no value, or was so improperly installed as to cause the operating motor to burn out very shortly after installation. It never served the purpose intended nor met requirements of appellees in supplying an added protection against fires. Certainly, with no further explanation we cannot say, as a matter of law, appellant should not be responsible for the quality of the article it selected, or for the manner of installation.

The foregoing discussion is sufficiently extensive to show why there is a wide variance in the holding, or finding of the master, as approved by decree of the court, covering value of supplies or commodities as determining capital investment upon which appellant company had the right to expect a reasonable return. Since ordinarily losses only, not profits, accrue from poor or ill considered investments, or improper installation, we are persuaded the appellant company may not now insist upon a reasonable return upon capital already lost even though the loss was the result of decreased cost of materials or labor that entered into the original investment.

We have given due consideration to other exceptions of the appellant although we do not discuss them. None of them seems more substantial than those we have considered.

We have in like manner fully considered every question raised upon the cross-appeal and find there is very little substantial merit in most of these matters.

One of these insistently urged on this cross-appeal is the allowance of $650 taxes. The master indicates that the amount may be high, but that he has followed the evidence given by Mr. Wilkes. If we understand appellee's controversy upon this item, they sustain their contention that the allowance is excessive by stating an amount of taxes for each year, and they say: "This is shown by the certificate of the county clerk," etc. This document referred to does not purport to be a certified copy of any record, but is a certificate of a matter as a fact. It does not appear such a certificate is one authorized by law. We have but recently decided a very similar matter. *Pekin Cooperage Co. v. State, use of Pike County,* 197 Ark. 341, 122 S. W. 2d 468.

We must, and do, presume the decree was based upon legal evidence only and we find no error in the decree upon this point. *Niagara Fire Ins. Co. v. Boon,* 76 Ark. 153, 88 S. W. 915; *Baldwin v. Brown,* 166 Ark. 1, 265 S. W. 976.

There is also objection to an allowance of two cents per K. W. H. for all electric current used to supply water. It appears from the report that this charge was usual to large consumers, and that it was regarded as one upon which the appellant had a margin of profit. It was in this manner our directions to allow a reasonable compensation were interpreted. We think there was no error in this respect.

Upon Mr. Wilkes' testimony there is a basis for allowance of items for repairs, stationery and other office expenses. Such allowances were not arbitrary, but based upon proof adduced without objection.

It now appears to us that the report of the master and decree provide reasonable compensation for all water pumped or produced for the water works department connected, as it was, with the ice plant. There seems to be at least 30 per cent. allowance for fire hydrants, flushing sewers and waste. Certainly appellants are not insisting upon any return approaching $36 per year, or any other sum, usually charged for rentals by such utilities when they furnish these hydrants. The water im-

provement district, not the appellant, installed the hydrants in the instant case.

No good purpose may be accomplished by a more extended comment upon matters already disposed of, nor by further discussion of less important items not mentioned.

The issues have been in a very great degree but a settlement of disputed questions of fact, and we hold these have been correctly decided.

The decree is affirmed.