768

5-4057                                           410 S. W. 2d 379

Opinion delivered January 16, 1967

*Johnston & Martin,* for appellant.

*Gordon & Gordon,* for appellee.

GEORGE ROSE SMITH, Justice. James A. Blythe was married three times. After his death in 1965 his first wife, the appellant Lucille Blythe, asserted that she and James were never divorced. On that basis she claimed dower and allowances as his lawful widow. *Evatt* v. *Miller,* 114 Ark. 84, 169 S. W. 817, L.R.A. 1916C, 759 (1914). The probate judge rejected that claim, finding that James's third wife, the appellee Libby Jo Fields Blythe, was his lawful widow.

Under our law the presumption in favor of the validity of a marriage is so strong that one who attacks a subsequent marriage on the ground now asserted has the difficult burden of proving the negative; that is, that

no divorce was in fact obtained by either party to the earlier marriage. *Estes* v. *Merrill,* 121 Ark. 361, 181 S. W. 136 (1915). The controlling issue here is the admissibility of certain documentary evidence offered by Lucille in her effort to prove that she and James were never divorced.

Lucille proved by James's brother that after James abandoned her in 1930 he lived in three states: Oregon, California, and Arkansas. At the trial Lucille offered statements executed by the circuit clerks (or similar officers) for all the counties in those states, attesting the absence of any divorce proceedings between James and Lucille Blythe. In substance each officer states that he is the custodian of the divorce records for the county and that there is no record of such a divorce proceeding between February 16, 1927 (the date of James's marriage to Lucille), and September 25, 1965 (the date of James's death). In the probate court those statements were held to be inadmissible.

In the absence of statute a party cannot prove by a public officer's certificate that a certain public record does not exist, because such a statement is testimony that should be subject to cross examination. *Pekin Cooperage Co.* v. *State,* 197 Ark. 341, 122 S. W. 2d 468 (1938). The appellant contends, however, that the rule has been changed by the Uniform Interstate and International Procedure Act. Ark. Stat. Ann., Title 27, Ch. 25 (Supp. 1965).

We agree that the statute changed the common law rule, but we are of the opinion that the statements offered in the court below did not meet the requirements of the Uniform Act. Specifically, we think that each statement should have been accompanied by a certificate executed by a second designated officer, certifying that the first officer was the custodian of the county divorce records. This, as we construe the Act, is the effect of Paragraphs A and D of § 27-2505, which we quote in part:

"A. Domestic record. An official record kept within . . . any state, . . . or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof, or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certifcate that the officer has the custody. The certificate may be made by a judge of a court of record having jurisdiction in the governmental unit in which the record is kept, authenticated by the seal of the court, or by any public officer having a seal of office and having official duties in the governmental unit in which the record is kept, authenticated by the seal of his office.

"B. Foreign record. [Not pertinent].

"C. Alternative method for certain domestic and foreign records. [Not pertinent].

"D. Lack of record. A written statement that after diligent search no record or entry of a specified tenor is found to exist in the records designated by the statement, authenticated as provided in this section in the case of a domestic record, . . . is admissible as evidence that the records contain no such record or entry."

Here the clerks' statements were offered under Paragraph D, to prove the lack of a record. That paragraph requires that the statement be authenticated as provided by Paragraph A, governing proof of domestic records. Paragraph A directs that the custodian's statement be accompanied by the certificate of a second officer, verifying the fact that the first officer is the custodian. There can be no sound reason for supposing that the legislature intended to require the accompanying certificate when the custodian is attesting the existence of an entry but not to require it when he is attesting its non-existence.

If there were any doubt about the point it would be set at rest by Rule 44 of the Federal Rules of Civil Procedure, after which the Uniform Act was patterned. Subsection (a) of that Rule is similar to Paragraph A of our statute. It applies to domestic records and requires the accompanying certificate of a second officer. Subsection (b), governing the proof of the lack of a record, follows immediately after Subsection (a) and expressly requires that the custodian's written statement that no record is found to exist be "accompanied by a certificate as above provided." In place of the clause just quoted the Uniform Act substitutes a different clause, "authenticated as provided in this section in the case of a domestic record," but the draftsmen's intent is clearly the same in both instances. The change in the wording of the Uniform Act, as compared with Rule 44, evidently came about by reason of the insertion of Paragraphs B and C in the statute, compelling the draftsmen to rephrase the cross reference to avoid ambiguity.

We conclude that the trial court was right in its ruling that the clerks' statements were not admissible in evidence. Without those statements the appellant's proof falls short of showing that James Blythe did not obtain a divorce before his marriage to the appellee.

Affirmed.