SMITH *v.* DANDRIDGE.

Opinion delivered February 27, 1911.

SCHOOL DISTRICTS—VALIDITY OF CONTRACT WITH DIRECTOR.—While a school director cannot make a binding contract with the district to pay him an agreed sum for his services outside of his official duties, still if the district accepts the benefit of his services, it will be liable to make just compensation therefor.

Appeal from Logan Chancery Court, Northern District; *J. V. Bourland,* Chancellor; affirmed.

Appellant *pro se.*

1. A director of a special school district can not lawfully receive pay out of the funds of the district for services as a member of the building committee of the school board in supervising the erection of a school building. Kirby's Dig. § § 7685, 7687, 7692.

2. Four directors, including the one who is to receive pay, can not legally pass on the claim authorizing the issuance of the warrant to him for such services by the president and secretary of the school board. Kirby's Dig. § § 7683; 7686; 78 Fed. 62; 56 Fed. 54; 24 S. W. 223; 89 Mo. 445; 130 Wis. 631; 109 N. W. 581; 110 N. W. 798; 95 Pac. 349; 61 Conn. 138; 81 Cal. 303; 57 Misc. Rep. (N. Y.) 392; 44 *Id.* 572; 68 Atl. 778; 133 N. Y. 887; 17 Misc. Rep. (N. Y.) 272; 40 N. Y. 366; 2 N. Y. Supp. 576.

*Carmichael, Brooks & Powers,* for appellee.

1. The statute providing that no member of a school board, except the secretary, shall receive compensation for his services, applies only to those duties which are enumerated by the statute or are impliedly required of the directors. Kirby's Dig. § 7687. The sections cited by appellant have no application, as it is not contended that the building of the schoolhouse was beyond the power of the board of directors. A contract between a public board and one of its members is not invalid by reason of the official relations existing. It is not void, but voidable. 15 L. R. A. 520; 135 Mass. 376; 141 Mass. 496; 168 Mass. 53. There is no allegation of fraud in the pleadings; and, while the action of the board in allowing the bill was voidable, any actual fraud or corruption is negatived by the finding of the lower court. 52 L. R. A. 518. The work was necessary, and it was not appellee's duty, under the statute, as a director to do it. He was in fact acting in this capacity as agent of the board, and is entitled to compensation on a *quantum meruit.* 58 Ark. 348; 61 Ark. 397.

2. Four members of a school board constitute a quorum for the transaction of business. Kirby's Dig., § 7683. When a quorum has met, it represents the whole body; and the majority

of the quorum may bind the corporation. 13 Am. St. Rep. 576; 16 *Id.* 633; 13 *Id.* 576; 144 U. S. 1; 95 U. S. 360; 12 Am. St. Rep. 53; 85 Am. Dec. 516; 32 *Id.* 243; 29 *Id.* 636; 16 Ia. 284; 85 Am. Dec. 516.

FRAUENTHAL, J. This was an action instituted by appellants, who were residents and taxpayers of the Special School District of Paris, against the treasurer of the county in which the school district is situated and G. G. Dandridge, to enjoin the payment of a school warrant which had been issued by the president and secretary of said school district to said Dandridge for work and labor alleged to have been performed by him for the school district. The Special School District of Paris had duly entered into a contract with certain contractors for the erection of a school building, and later it was deemed necessary to employ some one as superintendent to be present at the work and represent the school district to see that specifications as to the brick work were fully complied with. G. G. Dandridge was one of the directors of the school district, and at the request of a number of the other directors he performed the duties of superintending this work, and later presented his claim for such services to the board of directors. His claim, amounting to $172.50 for 69 days' work, was allowed by the directors at one of the regular meetings of the school board. At that meeting four directors were present, one of whom was said Dandridge, and the other three members voted in favor of the allowance of the claim.

It is not claimed that there was any fraud practiced either in the selection of Dandridge or in the allowance of his claim, or that services of the kind performed by him were not required. It appears that these services were deemed necessary, and were for the benefit of the school district, and were duly performed by Dandridge; and the amount of his claim was a fair and reasonable compensation therefor. It is urged that Dandridge was one of the school directors, and on that account he could not enter into a contract for his own employment by the school district; and it is also urged that his claim was allowed at a meeting where either his vote or his presence was necessary to constitute a quorum, and on that account its allowance was not legally made; and for these reasons it is contended that the warrant issued for

the payment of his claim is illegal, and its payment should be enjoined.

As a general rule, it is unlawful for a director to enter into a contract with the school district in which he has a personal and individual interest. His relation to the school district as a director thereof is of a confidential and fiduciary nature; he represents the school district, and is its agent. On this account he can not place himself in a position where his own personal interests might conflict with those of the school district which he must represent. The law and public policy forbid him from making a contract with the school district in which he has an individual interest; and a contract so made by a director will not be enforceable. The principle upon which this public policy is founded is that where one is acting in a fiduciary capacity for another he will not be permitted to make a contract with himself in his individual capacity relative to the subject-matter of such employment. *Pickett* v. *School District,* 25 Wis. 551; *People's Savings Bank* v. *Big Rock S. & C. Co.,* 81 Ark. 599; *Hoyle* v. *Plattsburgh & M. Rd. Co.,* 54 N. Y. 314; *Steele* v. *Gold Fissure Gold Mining Co.,* 95 Pac. 349. But a director is disabled from making a binding contract with the school district, not because the thing contracted for is itself illegal or tainted with moral turpitude, but because his personal relation to the district as its agent requires that he should have no self-interest antagonistic to that of the district in making a contract for it. The contract however in such case is not absolutely void, but it is simply not a binding agreement and may be avoided. If under such voidable contract the school district has accepted and retained benefits, it would still be liable to make just compensation therefor, not because of the contract but upon the principle that one ought to pay for valuable benefits received. This principle has been recognized and enforced in the case of *Spearman* v. *Texarkana,* 58 Ark. 348. In that case a physician was a member of the board of health of the city of Texarkana, and was employed by the board to render services on behalf of the city which were outside his duties as a member of the board. It was there held that while the physician could not enforce any contract made by him with the board of which he was a member, he still was entitled to recover compensation for what his services were reasonably worth.

Mr. Justice MANSFIELD, speaking for the court, said: "But the right to such recovery can not result from any contract to be implied from the request or direction of the board to render the service; for, as the plaintiff could have no express agreement with the board that would have been binding on the city, no binding agreement can arise by implication from anything that passed between him and the other members. His claim must be grounded solely on a contract created by the law in consideration of services shown to have benefited the city and for which it ought, therefore, in justice to pay." And in the same case the case of *Gardner* v. *Butler,* 30 N. J. Eq. 702, is cited with approval, wherein it was held that while the directors of a corporation could not make an agreement enforceable against the company to pay themselves a stipulated sum for their services, they could recover on a *quantum meruit* for such services as they had rendered and the benefit of which the company had received. In the case of *Frick* v. *Brinkley,* 61 Ark. 397, it was held that while a member of the council of a municipal corporation can not make a binding contract with it for the sale of drain tiles necessary for public improvement, still he was entitled to recover from the municipality what the tiles which it retained were reasonably worth. In that case it was said that the right of recovery did not rest upon any obligation growing out of the contract of purchase, but upon the principle of justice growing out of the obligation of every one, whether natural or artificial, to pay for the benefits which had been received. *Pickett* v. *School District, supra; Brown* v. *School District,* 55 Vt. 43; *Sylvester* v. *Webb,* 52 L. R. A. 518. From these authorities it will be seen that while a director of a corporation can not, on account of his fiduciary relations to it, make a contract with the corporation which will be enforceable, he will be entitled to recover a fair and reasonable compensation for property furnished to or services rendered for such corporation which were beneficial to the corporation and furnished or performed honestly and in good faith. The principle announced in the case of *People's Saving Bank* v. *Big Rock S. & C. Co.,* 81 Ark. 599, is not in conflict with this holding. In that case it was held that a mayor of a city could not take an assignment of the claim of a contractor against the city for the price of work which had been performed under a contract made with

the city, because of his fiduciary relation to the city. In that case it was said that the mayor as a member of the board of public affairs was required to determine whether or not the contractor had properly performed his work under the contract and was entitled to be paid the contract price. By the assignment to him of the contractor's claim against the city the mayor in effect stood in the place of the contractor, and thus obtained the contract with the city himself. Representing the city as mayor, he was required to inspect this work done under the contract for the payment of which he held the claim, and his individual interests would thus be antagonistic to his official duties. In effect, this case held that an officer of a municipal corporation could not by assignment obtain a contract made with the corporation which he could enforce, and thus indirectly enter into a binding contract with the corporation.

In the case at bar the appellee Dandridge is not endeavoring to recover under a contract made by him with the school district. As a director of the school district, he could not make a binding contract with it in which he was individually interested. It is not necessary to determine whether or not such a contract was made at a meeting of the school board organized with a legal quorum present because he could not enforce such a contract, even if all the other five directors had voted therefor at a legal meeting of the school board. His right to receive compensation from the school district is not based on the contract, but it is grounded solely on the principle that he has rendered necessary services from which the school district has received real benefits, and therefore should recover what those services are fairly and reasonably worth. This is not a suit brought by Dandridge to enforce any contract at law, but the appellants have by this action called upon a court of chancery for equitable relief. They can not in a court of conscience ask for a relief the effect of which would work injustice. The services which Dandridge performed, and for which he received the warrant as payment, were entirely outside of the duties of his office as a director; there is no claim made that there was any fraudulent dealing, either in selecting him to perform the services or in the amount of the claim therefor which he made; it is not claimed that the amount allowed him for the services is more than the services were fairly and reasonably

worth. Under these circumstances, we think that he is justly and equitably entitled to payment for such services.

Upon the trial of the case the chancellor entered a decree dismissing the complaint for the want of equity, and we think that in this action he was right.

The decree is affirmed.